Filed 2/28/22  P. v. Hernandez CA3
Opinion following transfer from Supreme Court

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C091247 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CR-FE-2009-0008905) |
| v. | |
| ARMONDO HERNANDEZ, | OPINION ON TRANSFER |
| Defendant and Appellant. | |

Defendant Armondo Hernandez appeals from the denial of his Penal Code section 1170.95 petition.[1]  He argues the trial court applied an incorrect analysis when evaluating his claim, and also that no substantial evidence supports the court's finding that he directly aided and abetted the killing.  In an unpublished opinion, we reversed the order denying the petition and remanded for a new hearing.  (*People v. Hernandez* (Aug. 9,

---

[1]  Further undesignated statutory references are to the Penal Code.

1

2021, C091247) [nonpub. opn.].) Our Supreme Court granted the Attorney General's petition for review and ultimately transferred the case with directions for this court to vacate our prior decision and reconsider the cause in light Senate Bill No. 775 (2020-2021 Reg. Sess.) (Stats. 2021, ch. 551) (Senate Bill No. 775). Upon reconsideration, we come to the same conclusion; the record does not establish that the trial court applied the correct analysis to defendant's claim. We reverse the order denying the petition and remand for a new hearing.

BACKGROUND

*The Murder and Conviction*

We take the background facts from our prior opinion on appeal, *People v. Hernandez* (June 9, 2015, C068079) [nonpub. opn.], and the record in that case, which we incorporated by reference at defendant's request. Defendant and his codefendants, Roberto Arias (Arias), Martin Flores (Flores), and Jose Hernandez (Jose), were members of the Proud Brown Trece subset of the Sureños criminal street gang, which is a rival of the Norteños criminal street gang.[2] On December 16, 2009, Arias, Flores, and Jose committed multiple assaults and two attempted murders against members, or former members, of the Norteños. Defendant did not participate.

Two days later, police impounded Flores's car following a traffic stop. After the vehicle was impounded, Flores communicated by text and phone calls with Arias and then went into the Bonfare Market. In the market, Flores exchanged words with Spencer Sampson (Sampson) (a Norteño who ultimately became the murder victim). Robert Limon (Limon) (also a Norteño) and Stephanie S. were with Sampson in the market and left following the exchange. Flores and Arias continued to exchange texts in which they agreed to meet up at a mutual friend's house so they could "get" the Norteños

---

[2] As defendant and Jose Hernandez share a surname, we use Jose's first name.

who had insulted Flores at the market, Sampson and Limon. Defendant drove Arias to the friend's house and they picked up Flores.

While driving around, defendant and the others attacked Angelo D. and David Z. Arias was holding a gun. Angelo D. was hit in the back of the head with a rock but was able to get up and run away. David Z. slipped and fell and before he could get up, the men attacked him by kicking and punching him. One of the men pointed a gun at him while the others continued to beat him. Defendant and the others then found and confronted Sampson and Limon. They circled around Stephanie S.; when Sampson intervened, Arias lifted his shirt and showed a gun. Someone hit Stephanie S. in the ear and the groups began to fight. Arias fought with Sampson. Defendant and Flores fought with Limon. Arias shot and killed Sampson. (*People v. Hernandez, supra*, C068079.)

The jury found defendant guilty of the murder of Sampson, writing in the verdict form that its finding was murder in the second degree (§ 187, subd. (a); count 9) and finding true that a principal discharged a firearm causing death (§ 12022.53, subd. (d) & (e)). The jury also found defendant guilty of three counts of aggravated assault (former § 245, subd. (a)(1)) against David Z. (count 7), Angelo D. (count 8), and Limon (count 11). As to each count, the jury found true the allegation the offense was committed for the benefit of a criminal street gang. (§ 186.22, subd. (b)(1).) The trial court sentenced defendant to a 14-year four-month determinate term in prison and an indeterminate term of 40 years to life. (*People v. Hernandez, supra,* C068079.) The jury did not find the special circumstance of murder carried out to further gang activities true as to defendant.

*Petition for Resentencing*

Defendant filed a petition for resentencing pursuant to section 1170.95, alleging he was prosecuted for and convicted of murder under the natural and probable consequences doctrine, and could not now be convicted of murder following Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437). The trial court found defendant had shown a prima facie case for relief, appointed counsel, and issued an order to show cause.

3

The parties submitted briefs and orally argued the issue to the court. The People initially argued if defendant were tried today he "could and would be convicted of second degree murder under the newly amended section 189," as he aided and abetted the murder and was a major participant in the murder.

As relevant here, the trial court stated: "So the issue here is the defendant was clearly an aider and abettor. So the question would be under the new sentencing law, is he . . . eligible for resentencing or is he liable for the murder charge as he was convicted. So the issue would be is he a major participant and did he act with reckless indifference to human life." The court reviewed the evidence submitted at trial and then reiterated, "So the question is, was the defendant a major participant and did he act with reckless indifference to human life." The court then referenced the evidence again and then concluded: "I believe that looking at the totality of the evidence here, it is clear that he was a major participant, he was not a minor aider and abettor, that they were all fighting together and he stayed there with them, and that this is also willful and reckless indifference to human life. So I am going to deny the motion for resentencing."

Defense counsel protested that the trial court "had applied the wrong standard to the review of this matter" and argued at length that the question of whether a defendant was a major participant who exhibited reckless indifference to human life applied to felony murder, which was not alleged. Defense counsel also noted the prosecution's theory at trial had been that defendant aided and abetted *the assault*, not murder. In response, the prosecutor stated: "So the court's analysis is correct. The inquiry is not what the jury convicted . . . defendant of, whenever this case was initially tried. The inquiry before the court is could this defendant be convicted of first or second-degree murder if he were tried today after passage and enactment of Senate Bill 1437."

Defense counsel and the trial court then engaged in further discussion of the applicable legal standard, with counsel arguing that the court was required to determine beyond a reasonable doubt that in convicting defendant, the jury, in fact, relied on a still

4

valid legal theory. After additional back and forth, the court responded: "I am convinced that had I not given the natural and probable consequences instruction, the jury would have convicted the defendant based on the other instructions, aiding and abetting, the other murder instructions, and based on the evidence. And I think that even with the natural and probable consequences out of the picture, I think he would have been convicted of murder. [¶] And as I say, [the statute] doesn't say just because natural and probable consequences was given, that the petition should be granted. It just says you have to have a hearing. And I believe the prosecution proved beyond a reasonable doubt that he was guilty of murder, even aside from natural and probable consequences." Defense counsel asked: "Under what theory?" to which the court replied: "Aiding and abetting the murder of Spencer Sampson." The court denied the petition.

DISCUSSION

Defendant originally contended the trial court erred in denying his petition for resentencing as there was not substantial evidence he aided and abetted the killing and acted with express or implied malice. He also argued the trial court was required to conduct an independent review to determine if the record established beyond a reasonable doubt that defendant remains guilty of murder under the current law. The Attorney General disagreed that this was the applicable standard, but argued that this was the standard the trial court applied in any event.

Neither party filed supplemental briefing on transfer of this case. We continue to agree with defendant's second claim; accordingly, we need not address his first. Senate Bill No. 1437, which took effect on January 1, 2019, limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure that a person's sentence is commensurate with his or her individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842-844.) Prior to the passage of Senate Bill No. 1437, under the natural and probable consequences doctrine, a defendant was "liable for murder if he or she aided and abetted

5

the commission of a criminal act (a target offense), and a principal in the target offense committed murder (a nontarget offense) that, even if unintended, was a natural and probable consequence of the target offense." (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 248.) Senate Bill No. 1437 amended section 188 to state that malice may not be imputed to a person based solely on his or her participation in a crime. (§ 188, subd. (a)(3).) Thus, pursuant to Senate Bill No. 1437, where the felony-murder rule is not at issue, a person must act with malice to be convicted of murder.

Senate Bill No. 1437 also added section 1170.95, which created a procedure whereby persons convicted of murder under a felony murder or natural and probable consequences theory may petition in the sentencing court for vacation of their convictions and resentencing. As relevant here, defendant is eligible for relief under section 1170.95 if he could no longer be convicted of first or second degree murder due to changes to sections 188 and 189 made by Senate Bill No. 1437. (See § 1170.95, subd. (a)(3).)

Senate Bill No. 775 was signed into law on October 5, 2021, and reaffirmed that the burden of proof at a section 1170.95 resentencing hearing is beyond a reasonable doubt and that a finding there is substantial evidence to support a conviction is insufficient to meet this burden. (Sen. Bill No. 775, 2021, ch. 551, §§ 1, subd. (c), 2, subd. (d)(3); § 1170.95, subd. (d)(3).) Senate Bill No. 775 also addressed what evidence is admissible at the resentencing hearing, and the standards governing that admissibility. (Stats. 2021, ch. 551, § 2, subd. (d)(3); § 1170.95, subd (d)(3).) Senate Bill No. 775 was passed as nonurgency legislation during the regular session and became effective on January 1, 2022. (Cal. Const., art. IV, § 8, subd. (c)(1); see also *People v. Camba* (1996) 50 Cal.App.4th 857, 862.) The statute applies to acts predating its enactment as either an ameliorative statute under *In re Estrada* (1965) 63 Cal.2d 740, 748 or a clarification of law (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243; *People v. Lee* (2018) 24 Cal.App.5th 50, 57). In either case, defendant is entitled to the benefit of the amendments to section 1170.95.

6

Here, the trial court determined the prima facie showing was made and issued an order to show cause, then conducted a hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1170.95, subds. (c), (d); *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1165-1166.) The parties agree that at the hearing the burden of proof was on the prosecution to prove, beyond a reasonable doubt, that the petitioner was ineligible for resentencing. (§ 1170.95, subd. (d)(3).)

Before the enactment of Senate Bill No. 775, there was a split of authority as to whether the trial court was required to conduct an independent review and determine beyond a reasonable doubt that defendant actually acted with the now required mental state. That issue is now resolved in favor of our decision in our original opinion in this case. There, we concluded the trial court must act as an independent fact finder and determine whether the prosecution has proven beyond a reasonable doubt that the petitioner is guilty of murder under the law as of January 1, 2019. This conclusion was consistent with the Supreme Court's decision in *People v. Gentile, supra*, 10 Cal.5th 830, where our high court explained: "[S]ection 1170.95 requires the superior court to determine on an individualized basis, after considering any new or additional evidence offered by the parties, whether the defendant is entitled to relief." (*Id*. at p. 855.) With the enactment of Senate Bill No. 775, section 1170.95 now explicitly states the prosecution must prove beyond a reasonable doubt that the defendant is guilty of murder under the law as amended, and a finding of substantial evidence to support a conviction is insufficient to meet this burden. (Sen. Bill No. 775, Stats. 2021, ch. 551, §§ 1, subd. (c), 2, subd. (d)(3); § 1170.95, subd. (d)(3).)

The Attorney General argued that despite the confusion evidenced at the hearing, the trial court ultimately conducted an independent review and found defendant guilty of malice murder. However, the Attorney General agreed that if we did not concur with his reading of the record, remand was required.

We do not agree that the record adequately conveys an informed decision by the trial court that resulted in a clear conclusion that the People proved (beyond a reasonable doubt, at the hearing) that defendant was guilty of malice murder under a direct aiding and abetting theory. Of additional concern, and highlighting the need for a solid and supported ruling, is that although the record is clear defendant aided and abetted the underlying assault, it is not so clear as to defendant's intent to aid and abet Sampson's *murder*, a theory neither briefed, pursued, instructed on, nor argued during the trial.

As we have described, the hearing on the petition began with an irrelevant finding as to the major participant and reckless indifference components of felony murder. As the hearing progressed, neither party articulated the correct standard, nor did the trial court articulate the standard it ultimately applied and the support for any conclusions made pursuant to that standard. Both parties argued theories to the trial court that they now concede were incorrect. Defendant argued the court was limited to determining whether the jury had found defendant guilty on a currently valid legal theory; he now acknowledges that was wrong. The Attorney General now acknowledges that the finding defendant was a major participant who acted with reckless indifference to human life does not support his murder conviction under current law.

During its short ruling, the trial court twice stated that the *jury* would have convicted defendant of murder based on the other instructions and without a natural and probable consequences instruction; this does not signal independent review. These statements also do not account for the jury's finding of second degree murder on an open murder charge, its finding of not true on the special circumstance, and the lack of instruction or any mention at all of the direct aiding and abetting theory of liability for the murder. Although the court later stated in cursory fashion that it believed the prosecution had proven beyond a reasonable doubt defendant was guilty of murder under a direct aiding and abetting theory, it did not explain its reasoning, and it is not clear to us that the court was actually applying the correct standard when it made that statement.

8

Accordingly, we must reverse the order denying the petition and remand the matter to the trial court for a new section 1170.95, subdivision (d)(3) hearing applying the correct standard, as described by this opinion, where the trial court may articulate and explain the resulting findings.  At the new hearing, the parties should be afforded the opportunity to present additional evidence, should they so request, consistent with the standards governing the admission of evidence set forth in section 1170.95, subdivision (d)(3).  In light of this open remand, we need not reach defendant's substantial evidence claim.

### DISPOSITION

The order denying defendant's petition is reversed.  The case is remanded for the trial court to conduct a new hearing under section 1170.95, subdivision (d)(3).


                                          /s/
                                    Duarte, J.



We concur:


      /s/
Raye, P. J.


      /s/
Krause, J.


9